Thank you. Our final case for argument today is Teamsters Pension Fund against Pitello. Mr. Ryan. May it please the court, William Ryan on behalf of the defendants. Mr. Ryan, you appear on camera. If you would either close that window or turn up the light, we would actually be able to see you. I will. I have my clerks here. That's a step, but it's a basic rule that you never want to appear in front of a bright background. Is that preferable? That certainly helps, yes. Thank you. Turn it on, please. Yes, the light is actually needed for your face. Is that good? Yeah. I think it's better. It will do. It will do. But it's always well to do these, to test these things beforehand, rather than waiting for assistance from the Article III judiciary. Because we were not confirmed, nominated by the President or confirmed by the Senate for our technological abilities. This is accidental for us, as it is for you. Okay, Mr. Ryan. Okay, so basically, I think the ultimate issue is the language in Messina about whether renting a property rent-free is improbably an investment. I think the word improbable invites analysis. And in fact, Messina and SCOFPB did analyze whether these were trader businesses versus an investment. My clients have none of the elements that were listed in any of those other cases. They did not take any tax benefits. That was admitted by the union. There's no evidence that the rental activity increased the equity in the property. The withdrawing employer in Messina paid utilities and insurance on the property. That was not the case here. There was no maintenance by the withdrawing employer done to the property. Wouldn't you agree, though, that it conferred a benefit on their company? I'm not sure how you pronounce this company's name. Grady? Grady's, yes. If there is a benefit, I would say it was so minimal as to be as if they hadn't rented the property at all. It was vacant. I think that the trial court thought that the benefit was just simply being able to control what was happening on the property. There's that, but there's also a rent-free. They had some little structure on it, a little office, and they used it to park. That was about it. Benefit to the individuals? Grady's, which they owned. This whole thing is about common ownership, right? The right hand and the left hand and the middle hand, so to speak, are all economically interdependent. I think there was some benefit to Grady's. They didn't have to pay rent. That's a pretty big benefit. That is a benefit, but I think the essence of that is that puts Grady's in a better position to be able to pay their withdrawal liability. I think if we're looking at fractionalization or dissipation, clearly that would argue against that. I'm not sure I buy. I mean, you made that argument in your brief, so I understand you're making it. Yes, the immediate benefit they're giving Grady's is lower costs of business operations. They're getting something for free that in the real market, the arm's-length market, people pay for. Now, if they're a really efficient company and they save a lot, maybe they'd have a lot for withdrawal obligations, maybe not. The immediate benefit is just lower costs of operation. Why isn't that enough to take it, under our cases, out of the scope of purely for investment? I suppose I would also like to know, other than just saying it, what other evidence there is in this record that this was purely investment property? Well, there is no evidence to the contrary that it was purely investment property. Yeah, but you're the ones who have to show that the fund went through all the hoops that it was supposed to. It sent the notice. It offered you arbitration. It offered you monthly payments. It did all these things. And the Patelos chose to go for all or nothing, and so here we are with now this withdrawal obligation. So they were the ones who had to say, this property isn't, in fact, part of our common business. It's just for investment. Well, I think you have to look at the fact that it was bought 18 years prior, that it was never rented, that... But it was used. Yeah, I mean, I understand it was purchased earlier. Why does that help us? I think it helps, well, I think the analysis has to be complete. We have to look at all the factors. And I don't think the trial court looked at any of the factors here. I think it just applied the Messina role as a blanket. So all of those things could be factors, but I don't think that was really expounded upon by the court. I think the assumption with Messina is that it's an absolute rule. And I think that some of these factors could possibly go in the union's favor, but I think most of them don't. And, in fact, most of the factors in the other cases have nothing to do with my client. So, you know, certainly there is some benefit here, but I don't think it's a substantial benefit that overweighs all of the absence of the other factors. Now, additionally, I don't think the court drew all the inferences in light most favorable to the non-moving party. I think that holding the property in their own names is not, per se, an effort to avoid the withdrawal liability. I think it's very common for people to do this. I think it's very common for people to have an investment in property without having such intentions to deprive the union of the withdrawal liability 18 years later. And, again, and we've touched on it, the fact that it was used rent-free, you know, if it conferred a benefit, I think this benefit was minimized by the fact that if they had an arm's length lessee, that they would have been increasing the equity in the property by being the show profit. And so when the building is sold, there is a established track record of viability of this property. That wasn't the case here. So, if anything, I think it has no bearing on equity, and I think the benefits are minimal. I don't think that there is much, if you had to put a cash value to it, I think it would be very minimal. And I'll reserve my final three minutes. Certainly, Mr. Ryan. Good morning, and may it please the court. It's a little confusing, but you know which Ryan I'm talking about. I think I do, Your Honor. Thank you very much. May it please the court, my name is Patrick Ryan, and I'm representing the plaintiff appellee in this case, Local 705 Pension Fund. You know, the issue before the court right now is a very discreet one, about whether the common owners of a company who was withdrawn from the pension fund, who also owned the property, may be held jointly liable as trades or businesses under common control. And I think, Judge Wood, you hit on the right case, Messina, which really kind of controls the outcome here, where this court established a categorical rule where the owners of the property are renting it to the withdrawn employer that they are de facto a trade or business, and here we clearly have the common control, the common ownership. I think the most significant factor here is that this isn't a case where the Patellos owned a property that they were renting to unrelated individuals, whether it's a residential property or a commercial property. You know, this was a property that was used exclusively by Grady's, and then also its related company, GX Warehousing. And it wasn't until Grady's ceased operating that GX started leasing that property to other third parties. So, you know, from 2009 when the ownership, when the Patellos took ownership of the property, it existed just for Grady's to do its business, and the Patellos' other companies to do their business. You know, I think that the issue about purchasing the property back in 2000 suggests that maybe the Patellos are arguing that there's a need to show a specific intent that they structured the ownership in this way to evade collective bargaining agreement. And we're not into the evade or avoid provision of withdrawal liability provisions here. We're not arguing that at all. You know, what Messina gets at, in part, is that this is a common mechanism where companies will fractionalize their assets, whether it's the physical property or trucks or whatever the case may be. Often the property will be owned by a separately incorporated entity. In this case, for whatever reason, the Patellos did not incorporate, they just held it individually. I don't think there's really any doubt that if they had incorporated and it was a holding company for the property, that they would be a business under common control. So I do think that the fact that they just held it as individuals, the analysis really is the same consistent with Messina. And Judge Wood, I think you also hit on the fact that if Grady's wasn't allowed to use this property by the Patellos, they would have had to have taken some other action to obtain property. Maybe it would have been their household, I don't know. But presumably it would have been out on the common market to lease property to conduct their business. And, you know, the fact that GX did start to lease the properties to other entities after Grady's ceased operating, and then they kept the proceeds from those leases, the proceeds didn't go to the Patellos, again, to me suggests that this was a property that existed solely to benefit Grady's and GX here. I think given how discreet the issues are, I don't really have anything more to present to you all this morning. Certainly I'm happy to take any questions, but otherwise, I thank you all very much for your time. Thank you, Mr. Ryan. Anything further, Mr. Ryan? Simply, Judge, I think the statute, you know, provides that liability only attaches to businesses under common control. There has to be a determination that this was a trade or business. And I don't think the analysis was ever conducted in this case. And I think despite what Messina says, or actually the application of Messina, I think it suggests that if something is improbable, you have to look in to see if it in fact could occur. And so I think rushing to determine that this is a trade or business simply because of a rent-free relationship is to ignore the fact that there are all these other factors in relation to determining what a trade and business is. So I don't think that the Messina decision is as bright line as it's been construed, because I think even in Messina, they analyzed all the issues. And again, I'm not entirely convinced that the union has jumped through all the hoops that they needed to establish that this is a trade or business. I think there is no evidence in the record to indicate that this is anything other than an investment. So with that, I'd rest and we'd ask for a remand. Thank you very much, Mr. Ryan. The case is taken under advisement and the court will be in recess.